IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JASON NORWOOD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:22-CV-819-RP |
| | § | |
| WILLIAMSON COUNTY, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are two separate motions to dismiss filed by Defendants Williamson County, et al., ("Williamson County"), (Dkt. 4), and by Defendants Shelby Little and the Williamson County Grays ("Wilco Grays"), (Dkt. 3), (collectively, "Defendants"). Plaintiff Jason Norwood ("Plaintiff") filed responses, (Dkt. 5, 14), and Defendants filed replies, (Dkt. 10, 17). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motions should be granted.

**I. BACKGROUND**

This case involves Williamson County's continued display of a monument ("the Confederate Statue") of a Confederate soldier outside the County's central courthouse in Georgetown, Texas. (Compl., Dkt. 1, at 1). As a brief background, in 1911, Williamson County opened its central courthouse. (*Id.* at 22). Five years later, the United Daughters of the Confederacy, an organization dedicated to memorializing Confederate soldiers, provided the Statue to Williamson County, which erected it in front of the courthouse steps. The Statue depicts a white soldier donning a Confederate uniform and holding a rifle. (*Id.* at 34–35). It bears two engraved Confederate flags and states that it is in memory of Confederate soldiers and sailors. (*Id.*).

1

Recently, amidst a backdrop of cities and counties across the country removing Confederate statues, Williamson County has begun to debate whether to remove the Statue in front of the courthouse. (*Id.* at 1–5). Local advocacy groups and religious organizations have pushed for the Statue to be removed and have organized protests at the courthouse steps. (*Id.* at 35). Most recently, rather than removing the Statue, Williamson County erected a separate, smaller monument dedicated to Dan Moody, who served as Williamson County attorney and successfully prosecuted the KKK in that role before eventually becoming Texas Attorney General and then Governor. (*Id.*). According to Plaintiff's complaint, two separate petitions to remove the Statue have each garnered over 10,000 signatures over the past two years, but Williamson County has not taken action on either petition. (*Id.* at 14). The complaint further alleges that the County originally voted to form a committee in October 2020 to discuss the potential removal of the Statue, but that the committee was never actually formed. (*Id.*). To this date, the Statue remains erected outside the County courthouse.

Plaintiff is a Black resident of the County. (*Id.* at 27). Since 2019, he has been involved in the community efforts advocating for the Statue's removal. (*Id.*). As a Black American and military veteran, Plaintiff considers the Statue to be an act of blatant racism sanctioned by the government. (*Id.*). He argues that Confederate statues and symbols on public land "send a highly inappropriate and demeaning message of state-sponsored racism" and glorify Williamson County's pro-slavery past. He brings suit alleging violations of the Equal Protection Clause under 42 U.S.C. § 1983, violations of the Civil Rights Act of 1964, violations of the Texas Constitution, violations of Section 3 of the Fourteenth Amendment for providing aid and comfort to enemies of the United States, and for intentional infliction of emotional distress. (*Id.* at 38–50).

Defendants separately moved to dismiss but raise similar arguments. (Mots. Dismiss, Dkt. 3, 4). The Williamson County Defendants argue that Plaintiff lacks standing, that Williamson County is immune from state tort law, and that many of the Defendants are improperly before the Court.

(Mot. Dismiss, Dkt. 3). The Wilco Greys also argue that Plaintiff lacks standing, and separately contend that the case presents a political question, that they cannot be liable under Section 1983 because they are not state actors, and that there is no First Amendment or Equal Protection violation. (Mot. Dismiss, Dkt. 4).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## III. DISCUSSION

The Court's analysis begins and ends with the conclusion that Plaintiff lacks standing under Fifth Circuit precedent. In *Moore v. Bryant*, 853 F.3d 245 (5th Cir. 2017), the Fifth Circuit dealt directly with the issue of whether government-endorsed Confederate symbols could be so offensive as to confer Article III standing on a plaintiff seeking their removal. In that case, the plaintiff alleged that Mississippi's use of the Confederate battle flag on its official state flag violated his rights under

the Equal Protection clause. *Id.* The plaintiff in that case alleged that, through his work as a lawyer in Mississippi, he was "unavoidably exposed to the state flag and that the flag's message is 'painful, threatening, and offensive' to him, makes him 'feel like a second-class citizen,' and causes him both physical and emotional injuries." *Id.* at 249. But the Fifth Circuit held that, absent any allegation that "he was *personally* subjected to discriminatory treatment," this type of stigmatic injury was insufficient as a matter of law to confer standing. *Id.* (emphasis added). "[S]tigmatic injury does not transform into injury in fact just because the source of the stigmatic injury is frequently confronted or the stigmatic harm is strongly, sincerely, and severely felt." *Id.* at 252.

In his complaint, Plaintiff does not allege any facts which distinguish his injuries from those in *Moore v. Bryant*. Plaintiff's harm is evident in his response to the motion to dismiss, (Resp., Dkt. 5), as is the offense he feels at a statue dedicated to soldiers of a country established with an express purpose of maintaining the legality of human slavery. *See, e.g.*, Conf. States of Am. Const. of 1861, art. I § 9; (Pl.'s Resp., Dkt. 5, at 2 (citing Alexander H. Stephens, Confederate Vice President, Cornerstone Speech (March 21, 1861) ("Our new government is founded upon . . . its foundations are laid, its cornerstone rests, upon the great truth that the negro is not equal to the white man; that slavery subordination to the superior race is his natural and normal condition."))). Nor does Williamson County deny, in its briefing, that the Statue may be offensive to its residents. (Mot. Dismiss, Dkt. 3; Reply, Dkt. 10). And Plaintiff states that he and his family have repeatedly endured racial epithets around the Statue. (Resp., Dkt. 5, at 7). The Court does not doubt that these harms are genuine and severe, but they are nonetheless insufficiently particular to establish Article III standing.[1] Plaintiff's injuries could form a basis for standing if he had been personally subjected to

---

[1] In his response, Plaintiff also raises the prospect of taxpayer standing. But any such standing is plainly barred against the municipality in question. *Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir. 2002) ("[S]tate taxpayers, like federal taxpayers, ordinarily lack a sufficient personal stake to challenge laws of general applicability, since their own injury is not distinct from that suffered by taxpayers in general."); *Christopher v.*

4

discriminatory treatment by Williamson County, but as the Statue creates only generalized harms, his injury is not "particularized" within the meaning of Article III. *Id.* Because Plaintiff lacks standing, the complaint must be dismissed.

As Williamson County notes, this legal principle applies to both sides of the proverbial street: courts have just as frequently held that groups attempting to *block* the removal of Confederate statues lack Article III standing. (Mot. Dismiss, Dkt. 3, at 4 (citing *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020); *Albert Sidney Johnston Chapter, Chapter No. 2060 v. City of San Antonio*, 14 F.4th 329, 330 (5th Cir. 2021))). If, one day, Williamson County does decide to remove the Statue, future attempts by private plaintiffs to halt its removal through litigation will presumably be equally unavailing.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' motions to dismiss, (Dkts. 3, 4), are **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SIGNED** on July 6, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

*Lawson*, 358 F. Supp. 3d 600, 608 (S.D. Tex. 2019) (noting that municipal expenditures must be more than de minimis).